IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**WENDY WEAVER**                                                                                                        **PLAINTIFF**

**V.**                                           **CASE NO. 3:16-CV-129-BD**

**NANCY A. BERRYHILL, Acting Commissioner,**
**Social Security Administration**                                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Wendy Weaver has appealed the final decision of the Commissioner of the Social Security Administration denying her claims for disability benefits and supplemental security income. Both parties have submitted appeal briefs, and the case is ready for decision.[1]

**Background**

Ms. Weaver alleges that she became limited in her ability to work due to short-term memory problems, a speech impairment, migraines, epilepsy, and lupus. (SSA record at 167, 171) After conducting a hearing, the Administrative Law Judge[2] ("ALJ") concluded that Ms. Weaver had not been under a disability within the meaning of the Social Security Act ("the Act") at any time from her alleged onset date, August 5, 2014, through February 17, 2016, the date of the decision. (*Id*. at 11-23) The Appeals Council denied the request for a review of the ALJ's decision, making the decision the final

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

[2] The Honorable Mark Ferguson.

decision of the Commissioner.  (*Id.* at 1-3)  Ms. Weaver then filed her complaint initiating this appeal.  (Docket entry #2)

Ms. Weaver was 42 years old at the time of the hearing and lived with her three children.  (SSA record at 36)  She had past work as a school bus driver, cook, and nurse assistant.  (*Id.* at 21, 38)

**The ALJ's Decision**

The ALJ found that Ms. Weaver had not engaged in substantial gainful activity since August 5, 2014, her amended onset date, and that her migraines and lupus were severe impairments; but, she did not have an impairment or combination of impairments that met a listing.  (*Id.* at 11, 13-16, 35)  He further found that Ms. Weaver's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  (*Id.* at 19)

Based on his findings, the ALJ concluded that, during the relevant time period, Ms. Weaver retained the residual functional capacity ("RFC") for light work except that she could only occasionally reach overhead with her dominant upper extremity and must avoid exposure to hazards.  (*Id.* at 16)

**Ms. Weaver's Allegations**

Ms. Weaver argues that the ALJ erred by finding that her obesity, seizure disorder, hypertension, back pain, and mental impairments were not severe. Specifically, she contends that the ALJ erred in finding that she could perform a limited range of light

work without first requesting a residual functional capacity assessment from a treating or examining physician or psychologist.  (#15)

**Standard on Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error.  *Papesh v. Colvin*, 786 F.3d 1126, 1131(8th Cir. 2015); see also 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

**Severe Impairments**

At step two of the sequential disability-determination process, the claimant must prove she had a severe impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 145 n. 5 (1987) (explaining that the Commissioner bears the burden at step five of the sequential evaluation process, but that the claimant bears the burden at steps one, two, and four).  If the claimant fails to prove a severe impairment, the process ends.  20 C.F.R. §416.920(a)(4)(ii).  If the claimant shows that she had a severe impairment, the process proceeds to the next step in the analysis.  Once the claimant meets her step-two burden, there is no reversible error in failing to identify all severe impairments so long as the record shows that the ALJ considered all of the medical evidence and all of the claimant's impairments, both severe and non-severe.

Here, the ALJ found, at step two, that Ms. Weaver's migraines and lupus were severe impairments. (*Id.* at 13)  The ALJ also considered Ms. Weaver's claims of short-term memory limitations, obesity, hypertension, seizures, vision loss, speech impairment, and anxiety impairment, but found that these impairments were not severe impairments. (*Id.* at 14-15)  The record supports the ALJ's assessment of Ms. Weaver's impairments.

**Seizures.**  Ms. Weaver complains the ALJ did not properly consider her seizure disorder.  The ALJ noted that Ms. Weaver alleged she had epileptic seizures, but also noted that her epilepsy responded well to medication.  He noted that Ms. Weaver stated that most of her seizures occurred in her sleep and also that, in spite of several referrals, Ms. Weaver had not seen a neurologist. (*Id.* at 14)  There is substantial evidence to support the ALJ's assessment. (*Id.* at 934, 1142, 1170, 1180, 1257)  Moreover, the ALJ specifically accounted for Ms. Weaver's limitations due to seizures when he limited her to work that would not expose her to hazards. (*Id.* at 16, 41)

**Obesity.**  Ms. Weaver asserts that obesity is a non-exertional impairment that "might significantly restrict a claimant's ability to perform the full range of sedentary work." (#15 at 35) While it is true that obesity *might* restrict a person's ability to work, Ms. Weaver never alleged that *she* had limitations due to obesity.  Ms. Weaver does not point to any records indicating a limitation based on her obesity. (#15 at 36)  The ALJ considered Ms. Weaver's obesity and found no evidence that obesity had any specific effect on her pulmonary, musculoskeletal, endocrine, or cardiac functioning.  (SSA

4

record at 14)  He acknowledged Ms. Weaver's obesity and the effect that her weight had on her ability to ambulate and, as a result, limited her to light work.  (*Id*.)  The ALJ properly assessed the effects of Ms. Weaver's obesity.

**Anxiety.**  Ms. Weaver argues that her anxiety limited her ability to perform basic work activities.  The ALJ considered Ms. Weaver's activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation in coming to his conclusion.  He found that she had no more than mild limitation in any area and no episodes of decompensation.  This conclusion is supported by substantial evidence in the record, including opinions of state agency physicians who reviewed Ms. Weaver's medical records.  (*Id*. at 78-79, 102-03, 131-32, 156-57, 301-08, 804-05, 844, 850, 927, 936, 938, 970, 988, 1040, 1056-57, 1066, 1124, 1182)  The ALJ did not err in his assessment of Ms. Weaver's anxiety.

**Pain.**  Finally, Ms. Weaver complains that the ALJ erred in failing to find that her pain, and conditions associated with it, were severe impairments.  (#15 at 37) Pain is a symptom, and a symptom cannot establish an impairment.  SSR 96–4p, Pol'y Interpretation Ruling Titles II & XVI: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations ("A 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment.").  Here, the ALJ properly considered Ms.

Weaver's pain through all steps of the disability determination process. *Bowen*, 482 U.S. at 156-57.

Ms. Weaver's claim depends on the credibility of her subjective complaints. "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The record reflects inconsistencies in the evidence as a whole.

Ms. Weaver complains about many disabling symptoms—back pain, shoulder pain, neck pain, wrist pain, and ankle pain. While she frequently sought treatment, reports from objective tests provide little support for her claimed disabling symptoms. (731-32 (shoulder), 925 (head), 946 (back), 964-67 (back), 1017-20 (wrist), 1115 (back), 1127-31 (knees, shoulder, abdomen and pelvis), 1156-57 (back), 1294-95 (ankle), 1286-87 (back)). In spite of her complaints of pain, on two occasions Ms. Weaver reported that she was able to go more than thirty days without pain medication. (*Id.* at 911, 916) Ms. Weaver also reported that, at times, her symptoms were well controlled by her medications. (*Id.* at 1170, 1257) *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

Ms. Weaver was, at times, non-compliant with treatment. Several treating sources recommended physical therapy, but Ms. Weaver failed to attend her appointments. (703, 731-32, 1141-43, 1211-16, 1217-22, 1223-34, 1312-20) On more than one occasion she

6

was referred to a neurologist, but failed to attend those appointments as well. (925-29, 933, 936-40, 1217-22) She discharged herself from treatment with a pain specialist because she did not like the injections he gave her. (1118, 1197-98) A reasonable mind would expect a person with disabling symptoms to seek and comply with medical treatment. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("A failure to follow a recommended course of treatment weighs against a claimant's credibility."); *Ostronski v. Chater,* 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to seek medical treatment for symptoms).

Even after concluding that these impairments were not severe, the ALJ went on to consider "all symptoms" in determining Ms. Weaver's residual functional capacity. (*Id*. at 16) Accordingly, any error on the ALJ's part in not categorizing these impairments as severe was harmless.

**Residual Functional Capacity**

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. Social Security Ruling 96-8p. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of claimant's ability to function in the workplace." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (internal citations omitted).

Pointing to *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000), Ms. Weaver asserts that the ALJ erred by not further developing the record by asking one of her

7

treating physicians or an examining physician for a residual functional capacity assessment. The applicable regulations and case law do not require that an ALJ obtain a residual functional capacity assessment from a treating source to complete the record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.")(quoting *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)); *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011) (the ALJ is required to contact a treating or consulting physician for additional information only if the medical records presented do not provide sufficient evidence to make a decision on disability).

The ALJ's residual functional capacity determination is supported by substantial evidence. He properly considered all of the medical and other relevant evidence of record in making his residual functional capacity determination, including Ms. Weaver's description of her limitations, medical records including the observations of her treating and examining physicians and others, and the opinions of state agency medical consultants. (*Id*. at 14-20) The ALJ's RFC is supported by some medical evidence[3] that is sufficiently clear to allow for an understanding of how Ms. Weaver's limitations function in a work environment. Therefore, substantial evidence supports the RFC determination. See *Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016) (ALJ's residual functional capacity analysis was not flawed where the ALJ properly weighed and

---

[3] The record includes 957 pages of medical records.

8

considered the extensive medical evidence in the record in making the RFC determination); *Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007) (there was substantial evidence to support the RFC determination because it was supported by medical evidence that sufficiently allowed for an understanding of how Plaintiff's limitations functioned in a work environment).

**Conclusion**

Substantial evidence supports the ALJ's decision denying Ms. Weaver's applications for disability insurance benefits and supplemental security income. The ALJ made no legal error. For these reasons, Ms. Weaver's request for relief (#2) is DENIED, and the decision denying the application for benefits is AFFIRMED.

DATED this 12th day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE